## MARY CRAWLEY v. RICHMOND & DANVILLE RAILROAD CO.

RAILROADS.  *Excessive speed.  Injury.  Contributory negligence.*

> Although a railroad company is *per se* guilty of negligence, and also vio-
> lates the law in running its train within an incorporated town more
> than six miles an hour, recovery cannot be had of it for the death of
> one whose contributory negligence, in recklessly exposing himself before
> the train while so running, was unmistakably the efficient cause of his
> being struck by the engine and killed.

FROM the circuit court of Webster county.

HON. C. H. CAMPBELL, Judge.

In May, 1891, Mike Crawley, a young unmarried man, was
struck and killed by a locomotive attached to one of appel-
lee's passenger-trains, and this action was instituted by Mary
Crawley, his mother, to recover for the loss of his services.
It is not controverted that plaintiff, as sole parent, dependent
for a support upon the deceased, was entitled to recover if
the accident occurred through the negligence of the railroad
company, and without contributory negligence on the part
of the deceased.  The defense rests solely on the ground
that Mike Crawley was guilty of contributory negligence,
directly causing his own death.  The uncontroverted evi-
dence is that Mike Crawley was in Eupora, a station on de-
fendant's railroad in Webster county, and intended to take
passage on the passenger-train going west; and when the
train whistled for the station he was near a, beer saloon,

about two hundred and fifty feet from the station-house. He had purchased a bottle or two of beer, and, when he heard the whistle of the locomotive, he ran into the saloon and hurriedly purchased two more bottles of beer, and ran to the depot, intending to purchase a ticket and take passage on the train.    The track runs east and west, and the station-house is on the north side of the track, and south-east of the beer saloon.    The ticket-office and waiting-room for passengers was, at that time, in the west end of the station-house; the freight department being in the east end.    The platform in front of the ticket-office and along the west side of the station-house was very narrow, and not more than six or seven inches high.    It did not extend entirely to the east end of the house, but terminated about six feet from the end, where it sloped to the ground, and to some planks lying on the ground, which extended to the iron rails of the track.    As Crawley reached the depot, and ran around the south-east corner, he was only eight or ten feet in front of the west-bound passenger-train, which was, at that moment, running at the rate of twelve or fifteen miles an hour.    A by-stander called to him to "look out," and he stopped suddenly and turned around, when he was struck by the projecting pilot-beam of the locomotive and knocked down.    His body was caught by the small wheels of the tender and dragged some distance, and, when the train was stopped, he was removed from under the tender badly mangled, and in a dying condition.

There was a sharp conflict in the evidence as to the point at which Crawley was standing when struck.    Several witnesses for the plaintiff testified that he had just stepped upon the second plank of the platform which was used by passengers; that the pilot-beam projected over the edge of the platform, so as to render it dangerous for passengers standing near the edge.    On the other hand, witnesses for the defendant testified that Crawley ran so rapidly around the corner of the station-house that his momentum carried him

to, or very near, the rails, and that he either fell or was struck by the engine. Several witnesses who were in front of the beer saloon testified to this, and further stated that they saw Crawley when he was struck, and that he was not on the platform, and that it was impossible to see the platform, or one on it, from the direction of the saloon. There were other minor circumstances in evidence tending to support the contention of both sides, but as the court, in its opinion, finds, as a matter of fact, from all the evidence, that the action of the deceased was imprudent and reckless, it is not deemed necessary to set out the evidence in greater detail.

The main question passed on by the court arises out of its consideration, in connection with Crawley's negligence, of the negligence and illegal conduct of the railroad company in running its train at an excessive rate of speed. The engineer admitted that, at the time of the accident, the train was running about twelve miles an hour.

Section 1047, code 1880, is as follows: "Any railroad company having the right of way may run locomotives and cars by steam through towns, cities and villages, at the rate of six miles an hour, and no more; and if, in passing through any town, city, or village any locomotive or car should be run at a greater rate of speed, the company shall pay $100, to be recovered by suit in the name of such town, city or village, and for its use; and the company shall, moreover, be liable for any damage or injury which may be sustained by any one from such locomotive or cars whilst they are running at a greater rate of speed than six miles an hour through any city, town or village."

The trial in the circuit court resulted in a peremptory instruction for the defendant. Judgment accordingly, and plaintiff appeals.

*Rush & Gardner*, for appellant.

It cannot be said, under the evidence, that there is no room

to doubt that plaintiff was guilty of contributory negligence. In such case it is error to give a peremptory instruction. 52 Miss., 704. Disinterested witnesses testify that deceased was standing on the platform when struck. Being there, he had a right to assume that he was safe from collision. Surely it is not *per se* negligence to be on a passenger platform when a passenger-train is passing. It is the duty of the railroad company to provide safe platforms, and one on any part of the platform may suppose he is safe from collision with passing trains, just as pedestrians on a sidewalk, who are not on the watch for passing vehicles, are not *per se* guilty of negligence. See 72 Mo., 392; 8 Am. & Eng. R. R. Cas., 485. The railroad company must run its engines with reference to such use of its platforms. Pierce on Railroads, 276; Whittaker's Smith on Neg., 318; 1 Thompson on Neg., 315. The use of a platform that is too narrow is itself gross negligence in the company. 63 Ill., 167. Railroad companies are liable for the injuries where passengers on platforms at stations are struck by passing engines, any part of which projects over the platform. Patterson on Ry. Ac. Law, 256; 88 N. Y., 203; 72 Mo., 392. But for the excessive and illegal rate of speed, deceased would not have been killed. This is a stronger case than *Fulmer* v. *R. R. Co.*, 68 Miss., 355.

*A. F. Fox*, for appellee,

Filed a written argument, without citation of authorities, to show that deceased was guilty of the grossest contributory negligence.

Argued orally by *W. T. Rush*, for appellant, and *A. F. Fox*, for appellee.

CAMPBELL, C. J., delivered the opinion of the court.

It is so clear that the unfortunate man who was killed contributed directly to his own death by his incautious and reckless action, that the court properly told the jury the plaintiff was not entitled to recover.

It is true that the defendant was guilty of a violation of law in the rate of speed at which the train was run, but this was *causa sine qua non*, while the *causa causans* was the imprudence of the person killed, so unmistakable as to authorize the assertion that he was the cause of his death.

We sympathize tenderly with the mother, who, in the death of her son, lost her means of support, but have no authority to serve her by permitting any relaxation of the rules of law in her favor.

*Affirmed.*